Good afternoon. My name is Dan Poulsen. I'm with the Federal Defenders. I'm representing Mr. Peterson. Our first claim in this direct appeal is that the trial court abused its discretion in denying the defense motion for a mistrial. Mr. Peterson was prosecuted for felon in possession of a firearm based on an assault rifle that was located in the back of a vehicle that he was occupying when police responded to his girlfriend's residence to serve a search warrant. I'm sorry, to actually execute an arrest warrant, and they later obtained a search warrant for the property for items relating to a burglary investigation. Now, the government, in its pretrial trial brief, stated that they were going to refrain from indicating that Mr. Peterson had been the subject of a burglary investigation. And during a pretrial conference, the government stated that they were going to try to sanitize this information to basically state broadly that the reason why officers were in the area and why Mr. Peterson was contacted was because they were doing a follow-up on a theft investigation. But the government agreed that it would refrain from indicating that Mr. Peterson had been the subject of a burglary investigation. And so despite that, on the first day of trial, I think within the first 10 minutes, one of the government's witnesses indicated that they were in the area doing a follow-up on a burglary investigation. There was a lot of testimony presented about the officers' attempts to obtain that search warrant, the process by which they obtained the search warrant. And then later on, there were references made to Mr. Peterson being placed in custody and transported from the scene. And because of those references — You didn't say that they were investigating him for burglary. I'm sorry? You didn't say that they were there to investigate him for burglary. And we're taking the position that the jury would have been able to make the inference that Mr. Peterson was indeed arrested on burglary charges, again, just because of the number of police officers who were on the scene, the fact that there was lengthy discussion about the search warrant application process. And again — Your in limine motion was predicated upon what? Well, you wanted to let the jury know that one charge was dismissed or something like that, right? Yeah. The defense made a number of attempts to try to minimize the prejudice because — It turns out that there wasn't really a dismissal. Wasn't there a plea to a lesser charge? Correct. I believe that — How is that going to help you? Well, in any — He pleaded guilty to misdemeanor instead of a felony. Is that what you're — Is that what minimizes the taint? Well, I think the defense was trying to make the best out of a bad situation. But ultimately, we're not trying to attack the trial court's initial decision to allow the officers to testify broadly that they had been there for a theft investigation. But what we are saying is that the cumulative effect of all these references, again, to burglary, to the fact that Mr. Peterson was placed in custody, had the effect, I think, of tilting the jury's consideration of the evidence in a way that unfairly benefited the government. You're attributing a fair amount of knowledge to the jury of criminal procedure. I mean, that — My suspicion is the custody thing kind of went by them. I mean, they knew the police were there. They knew that he ended up being arrested, whether they focused on when he was arrested or the fact that it wouldn't have been proper to arrest him at that point unless they had something else. I mean, there was nothing in the trial that went into that. They have to be fairly sophisticated to make the inferences you're asking for. I don't think you have to be that sophisticated. And I would also point out that things are very different here in Anchorage where property offenses are kind of on the rise. It's been a great subject of concern. The Alaska legislature recently repealed a number of criminal sentencing reforms because of concerns that it was too lenient for people who are charged with property-based offenses. So burglary carries a certain kind of message, I think, with Alaska juries. But in any event, we would say that this was a case in which the defendant testified. This is a case where his credibility was at issue. Certainly, if the jury was under the impression that he had been charged, prosecuted for burglary, that obviously carries weight as to his credibility, and obviously the specter of Mr. Peterson having outstanding criminal charges or having criminal history obviously carries a risk that the jury is going to. There are plenty of other pretty good reasons to not believe the story. Well, and I'll talk about that when we talk about the obstruction of justice enhancement. But ultimately, this was a case where Mr. Peterson's credibility was on the line. And, again, the message that I think that was sent to the jury was that you shouldn't believe Mr. Peterson for any number of reasons, but certainly the fact that he was prosecuted for burglary tipped the balance, I think, for the government's arguments. And just to be clear, I think the government made some arguments that we may have forfeited or objected. But just to be clear, we are arguing that the trial court abused its discretion with respect to the mistrial motion. We're not renewing any evidentiary challenges to the trial judge's initial ruling. With respect to Claim 2, we're arguing that the trial court abused its discretion in failing to do an inquiry, a follow-up inquiry, with Juror Number 3. That's because midway through trial it came to the attention of the court that one of the jurors, who had stated that she was good friends with an assistant U.S. attorney, later in the middle of trial there was some bad weather and she needed apparently to make arrangements for her child or children who couldn't go to school. And she contacted the household of that U.S. attorney, assistant U.S. attorney. She said in the voir dire that she was friends. Yeah, yeah. This is no news. Well, I think there is a difference. You call up a friend about this sort of stuff all the time. That's what friends do. Sure enough. But I think there's a material difference between saying on the one hand I'm good friends with somebody and on the other hand I rely on them to look after my kids. They're helping raise my kids. I think there's a difference in kind. I don't think helping raise those would happen, but pick up and drop off. You pick up and drop off and I think maybe even babysitting. And that's the other question. That's the other issue that we have here is that the trial court didn't do an inquiry. They didn't ask the juror what had happened, the nature of the communication. Did you ask for an inquiry? We did not. I think that we kind of stood by as the court ruled. This is a plain error issue, huh? Yeah. I would actually submit that the fact that we raised a forecaused challenge to that juror I think is sufficient to preserve the issue. And we would say that even under plain error review the court was obligated to do a follow-up inquiry just because. You raised a forecaused challenge, but you didn't use a peremptory. Well, and I don't think that under the case law, and we cited this, I think, and there was a motion that we filed for extension of briefs and we cited two, I think, a Supreme Court case and I'm blanking on the case, unfortunately, that states that in so many ways that it's not necessary for the defense to exhaust its premises. Your time is running. I speak only for myself, but I think your third argument, the one you haven't got to, is the one that has any purchase for me. I think it's a winner. And the reason for that is that. It's a winner, but it's the best of the three in my view. All right. So I think it's pretty cut and dry. You're correct that. I didn't say that either. Well, okay. You can't blame me for trying. You're correct. So we're saying that the situation that we're dealing with, with the obstruction of justice enhancement, is basically identical to what this court confronted in Castro Ponce. And that's a case where the court said that I find that the defendant testified falsely. I find his statements completely incredible. I'm implying the obstruction of justice enhancement, but there weren't any findings as to willfulness or materiality. In this case. Let me ask you to address a preliminary question. I don't know if this even rises to a plain error as much as. . . I think Governor's position is that this is waived because you never raised it in the trial court. You never raised it in your briefs until what you got an order from this court saying. What about this issue here, right? What's your answer? I think the Governor's position is that you waived this. I think we fought over the obstruction of justice enhancement. You did what? I think we fought over the obstruction of justice enhancement, the two-point enhancement for obstruction of justice. That's the third claim of error here. But you never argued in your brief here, did you? We did, yeah. No, until you got to the supplemental brief. No, we didn't file a supplemental brief. No, this was in the opening brief. It was in your opening brief? Yes. All right. I'll look for that. Sorry. Our third claim of error is that the district court did not make the required findings before imposing the obstruction of justice enhancement. Two things. One is that there seemed to be two obstruction of justices here. One was his own testimony. The other was essentially a subordinating perjurer. Yeah. And the question is whether the same rather . . . As strict as it is to, as I understand it, to not discourage people from testifying on their own behalf. Right. But in terms of there's not the same interest in not discouraging defendants from talking to witnesses. Subordinating perjury. Subordinating perjury. And, moreover, the materiality here is, you know, not even in dispute. I mean, there's no way it wasn't material. Well . . . As to the witness, at least. Sure. And our position is that the court made very deliberate findings. She stated that she believed that Mr. Peterson had influenced his girlfriend to testify falsely. But in any event, the absence of materiality findings, that's a question for the district court to make in the first instance. The case law is very clear on that. And that does warrant a . . . Is there not some point at which you say, well, this was so obviously material that it's just asking somebody to be a ventriloquist to have them say it? I guess I would look to Castro-Ponce, which says it is necessary for the district court, rather than the reviewing court, to make a finding on the issue of materiality. And, again, a district court's decision enhancing sentences for obstruction of justice must be remanded. What I asked you, which you haven't responded to, is there was a reason for being persnickety in that context, which was so as not to discourage people from testifying on their own behalf. Let's back Mr. Peterson's own testimony out of here. There was still another basis for the obstruction. I see what you're saying. Right. Right. And I still don't think she made findings as to . . . I'll just put it this way. The government's argument throughout was that Mr. Peterson induced or influenced Ms. Girardin to testify falsely. But, ultimately, I'm not sure that her testimony was relevant to the jury's decision. I think that the jury could have convicted Mr. Peterson for reasons altogether different from what the government was pointing to. That's not the test for materiality. I'm sorry? That's not the test for materiality. The test for materiality is the opposite. Could they have relied on it? Right. And I'm saying that I don't think they necessarily relied on the government's arguments that Mr. Peterson, you know, was falsifying or lying about the circumstances of how the gun ended up in the vehicle. I think the jury could have said, we don't care about how the gun ended up in the vehicle. Mr. Peterson came into possession of the firearm at that point and then convicted him on that basis. Why don't we hear from the government? We've taken you over. We'll give you a little time to respond. Thank you. May it please the Court, my name is Will Taylor. I represent the United States. I was also the trial attorney in this case. I guess I'll pick up on the point that this Court was just on regarding whether the enhancement for obstruction of justice was well-founded or whether the Court was clearly erroneous in finding it. And here I think she did tag all of the elements. She said he willfully obstructed justice. It obviously related to the charged offense here, which I think covers that this wasn't an ancillary issue that there might have been a lie about. It's not a finding of materiality. Well, I mean, I think that is what the judge was saying when she said – The issue is whether or not the district judge addressed all those factors. Right, and I think the record shows that she did address all those factors. She said it obviously relates to the charged offense here. It's obviously a reference to the testimony about the gun because she's talking about the jail calls and she reviewed the testimony from the trial. And again, I mean, what the Dunnegan case says is essentially it has to encompass all the factual predicates for finding of perjury. And I think even if she didn't specifically say the magic words of each element, what she announced when she found the obstruction charge or enhancement certainly covered all those. But that assumes that materiality and relevance are the same thing, but they're not. Well, I mean – I mean, she didn't find materiality, and is finding relevance a substitute for finding materiality? Well, I don't know that she said relevance. I think when she made the statement that it obviously related to the charged offense here, that's her materiality finding. I mean, when she said it relates to the offense, it relates to the elements of this charge, and really the only element of dispute was did he possess the gun. Something could relate to it and not be material. Is there any case that says something like this, that even though there's no express finding of materiality, if the facts of the case are so clear that it's obvious or almost obvious, you know, that the statement was material or addressed a material issue, I mean, does that sort of make it, what, something like harmless error? So I think – I can't think of a case specifically on this point, but generally speaking, this Court can uphold a decision of a lower court based on any support in the record. And here I think it, again, is well supported in the record. You mean there's a record that would make it apparent that this is a material issue? Correct. Again, our position is that the judge – that's what she was saying when you read the entirety of her comments and the discussion of what she was reviewing, when she was making that finding, she was making a materiality finding as far as that this testimony related to an essential element at trial. Again, when she's saying that it relates to the charged offense here, the only element in dispute was whether he possessed the firearm. So she was saying the testimony related to that one element, and therefore it's material. And again, I mean, it sounds like this Court's concerned on whether she said she actually ticked off the elements. Again, I think she – I think the record shows she did. Are you relying for the obstruction only on Peterson's own testimony and not on the suborning perjury or something to that effect with regard to the witness? No, the district court found both. She also said that he attempted and, I guess, succeeded in having his girlfriend testify falsely. So there was two independent bases for that. And again, it's – Did she make any statement with regard to the girlfriend about – even of the vaguer kind that you're talking about? I think when she was making the findings, when she said it obviously relates to the charged offense here, she was referring to both the testimony because the core false testimony there was that he had no idea about the gun. She put it in there, and he never touched it. So I think she was referencing both of those when you read it in context. To me, it's – maybe only to me, it sounds obvious that the girlfriend's testimony was material because didn't it go mostly to ownership? And ownership is not an element, right? Well, she was kind of testifying to what his knowledge would have been based on circumstantial evidence. Did she say something like, well, and he knew nothing about the gun, something like that? Did she make that kind of – She danced around that point. And it's obvious, I guess, when you read it in context with the jail calls that were played, that the entire kind of theme that they were trying to run with was that he had no idea. It just got put in the back of his car in order to be transported to her uncle or her grandfather's house or someone of that nature. Let me ask a question about the girlfriend. What – maybe she said something else, but what I'm finding she said was also considered – let's see. What she said about the girlfriend was not so obvious. She said something like – Now, I do see that in this particular case, Mr. Peterson did attempt and perhaps succeeded, I guess, in influencing Ms. Girardin to testify. So the attempting is sufficient? Yeah, under the guideline, it's – I'm sorry? Under the guidelines, it is sufficient that they attempt to do so. And in this case, I think what the judge was saying is they attempted and I guess succeeded. I think the jail calls alone would have been potentially enough, but obviously with her actually going in and then testifying falsely, she actually completed the perjury process. So, again, our position is that – Can I talk for a moment about the juror question? Yes, Your Honor. Whether it's reversible error or not, I don't know, but it certainly was a little surprising to me that the district judge didn't make an inquiry. I guess – I mean, it didn't – it wasn't an allegation of misconduct. We brought it to the Court's attention just because, generally, disclosure is better than concealment. And, you know, maybe the defendant had a specific reason to request further questioning or he had a case that I wasn't aware of. But there wasn't even an allegation that she had done anything wrong. She made this known during the initial voir dire. There was actually no cause for – there was no forecast challenge on her. That was related to a different juror that knew the U.S. attorney. He said there was. He's wrong about that? I think what he was saying was they were making kind of a forecast challenge based on the fact at the end of trial that she had contacted the AUSA's wife. But there was not a forecast challenge or a preemptory challenge used for that juror. And there was no additional – I'm not asking her as to what the relationship was. I'm sorry. What was that? Or any further questioning at the voir dire stage of what the relationship was. Correct. He asked for more information about the juror who knew the actual U.S. attorney but did not ask for any further questioning of the juror who was friends with the assistant U.S. attorney. Two separate jurors. You say there's no allegation of wrongdoing, which is correct. But the reason for that is because there was no hearing, right? I mean, that could be the reason. In other words, there was no inquiry into whether there was any wrongdoing or not or any misconduct. Right. And this Court has said, and I know it's in a slightly different context, when this Court said that the district court has wide discretion based on the nature of the information that they are provided on what the next steps are. What's a little disconcerting is that they're getting the information from the government who got it from her, right? And if she, while she was on the phone, had said, oh, you know, in this case it seems to me that the defendant's guilty or something, the likelihood that she would have told anybody isn't so terrific. So once you know that there's been this contact with somebody, at least somewhat connected to the prosecution, it did seem odd that he didn't ask any questions. Well, I mean, it seems that there was no request to do so, and it seemed that if anyone was really concerned they could have made that request. He initially went, he said he found the call itself objectionable, therefore accepting the premise of why the call was made, so there was no need to further investigate it, and then just he said that the juror was making faces at him and he didn't like that. I think based on those allegations and the kind of acceptance of what the government said was true, there didn't seem to be a need to question further. How did this come to the government's attention that this phone call had been made? So the AUSA's wife told the AUSA and he came and told me, and then I told the court and told the defense attorney. That's what I thought. Yeah, so it wasn't, there was no contact actually between the AUSA, and that's also in the record. But again, I mean, this, I don't see it any differently, or our position is that, you know, if she had contacted any other family friend, you know, as the court said when addressing some of these issues, it's a smaller jury pool up here and it's often that people know each other, especially, you know, in Anchorage and smaller communities. So if there's not an allegation that she had done something wrong, then there's really no need to continue to question. With that, my time is up. If there's any further questions. He made the allegation. He didn't know anything about it, right? I mean, he could have requested additional inquiry on that, but he didn't. Again, when he says, I find the call itself objectionable, he accepted that what the premise was true, that this was just a call about child care. And he was just saying that that in and of itself, he thought, was a problem. There was no allegation other than speculation that the case was talked about, more so than any other of the jurors who were talking to people at the grocery store, or their family members. Thank you, Your Honor. Thank you. Now, we've taken you over, despite your late start on your third issue. Could you put one minute on the clock, please? Okay. Thank you. Just to pick up where the court left off, our position is that there's a couple of possible issues here. One is that the juror may have had contact with a member of the prosecutor's family and talked about the case. But more, I think, specifically, there might be a situation of implied bias, given that the juror's initial statement, saying that she was good friends with the prosecutor, may not have disclosed the full nature of the relationship. I did not understand you at all in your briefs, that absent this phone call, that you were making a general implied bias claim  Well, we cited the fields v. Brown, and we talked about implied bias in the brief. But you weren't contending that she shouldn't have been in the jury in the first place. Well, we think that there is more information that came to light that warranted the court to conduct the kind of inquiry that we're asking this court to remand for. But you didn't ask her to make the inquiry at the time. Correct. And, again, our position is that even under a plain error review, this court should remand for findings. That's not a question of plain error review. It's that when you had the original voir dire, and you could have asked her more about what her actual relationship was, you didn't do that. Is he correct that you did not challenge her for cause, actually? Correct. Right, even though you said before that you did. And that you didn't have a peremptory challenge, but you also didn't challenge her for cause. So it seems to me that based on just what you knew at the time of the original voir dire, you couldn't have an implicit bias claim. And, again, I think that the phrase good friends is different than saying that I have a familial relationship with a member of the U.S. Attorney's Office. I never thought I had a familial relationship with people I asked to pick up my children. Right. And then with regards to the obstruction of justice enhancement, again, I think the case law is very clear that this is a question for the district court to address. We heard you on that point. Okay. All right. Thank you. Thank you very much for your arguments.
judges: Tashima, W. Fletcher, Berzon